## DRAPER CO. v. STAFFORD CO.

(Circuit Court, D. Massachusetts. April 14, 1911.)

No. 651.

Patents (§ 328*)—Infringement.

 The Draper patent, No. 527,014, for a loom, discloses patentable invention, but the claims must be limited to a construction in which the detector, which determines the degree in which the weft thread in loom weaving has been drawn from the bobbin, is mounted independently of the shuttle and to substantially the mechanical means described. As so construed. *held* not infringed.

In Equity. Suit by the Draper Company against the Stafford Company. Decree for defendant.

Fish, Richardson, Herrick & Neave and W. K. Richardson, for complainant.

William A. Copeland and Wilmarth H. Thurston, for defendant.

ALDRICH, District Judge. Under old conditions in loom weaving, the weft thread, as the shuttle was thrown, was delivered from the spool or bobbin until it was wholly drawn from the spool or bobbin, and as a result it sometimes, and perhaps oftentimes, happened that the end of the thread was left in the cloth between the selvages, thus creating a defect or imperfection which was particularly detrimental in weaving the finer goods. In order to unravel the imperfection and remedy the defect, it was necessary to stop the machine, and means had been devised for stopping the machine automatically, to the end that the imperfection might be removed.

It is plain enough that, under such conditions in loom weaving, any means for determining the degree in which the weft thread had been drawn from the bobbin as it was approaching exhaustion, to the end that the bobbin might be displaced and another, filled with weft thread, supplied before the thread upon the operating bobbin should be broken at its end and the loose end left in the body of the cloth, would be looked upon as a meritorious and substantial improvement in the loom-weaving industry.

This proceeding is one to restrain alleged infringement of patent 527,014 which was issued to G. O. Draper, October 2, 1894.

The following claims are the only ones in issue:

"1. In a loom, a shuttle carrying an exposed cop or bobbin of filling, a detector independent of the shuttle to contact with the filling at predetermined intervals to determine its volume, and devices intermediate the detector and a filling supplying mechanism to cause a new supply of filling to be placed in the shuttle when the former supply shall have been exhausted to a predetermined amount, substantially as described.

"2. In a loom, a lay having a shuttle-box, and a shuttle therein open at one side to expose the filling on a bobbin or cop within said shuttle, combined with a detector independent of the shuttle to enter the latter and contact with the filling wound on the bobbin or cop, for the purpose set forth."

There were inventions earlier than Draper's based upon the idea of furnishing mechanical means for detecting the condition of the weft on the bobbin as it was approaching exhaustion, and of substituting a bobbin filled with thread before the thread upon the one in use had been fully run out and broken midway or at other points which might create a defect in the cloth.

Without going very much into the prior art, it is sufficient to say that earlier patents covered the idea of detecting the measure at which the thread had run out, and means were suggested for a detector which should operate intermittently or at predetermined intervals. In some of the earlier devices, the detector was suggested as something to be installed inside the bobbin. In others, as mounted upon the shuttle, and in some of the earlier patents, at least, the idea of mounting the detector independently of the shuttle was perhaps present. It is probably true, however, that no practical way of doing this was either conceived or demonstrated prior to the Draper invention.

It is apparent that the Patent Office, at the time the Draper patent was under consideration, deemed the state of the art to be such that it covered the idea of ascertaining at intermittent periods the

extent to which the thread had been drawn from the bobbin or cop, and, when it had reached a certain point of approximate exhaustion, of displacing the operating bobbin and substituting another with a fresh supply of thread, thus avoiding the imperfection which might result from a possible or probable loose end left between the selvages. Such phase of the art is so apparent that it seems quite unnecessary to make an analysis of the different patents. like that to Crawford and Templeton, the two Brooks patents, .the Rush and Oldfield patent, and others, because it is true in a very broad sense, at least, that these ideas, including that of automatically replenishing the weft, had a substantial status in the then existing art.

While none of these inventions came into commercial use, the same is true of the Draper patent in question.

The reasonable view of the situation would seem to be that everything substantial in the Draper patent, except the idea of mounting the detector mechanism independent of the shuttle, was present in the prior art; and, while it is true that the idea of mounting the detector mechanism independent of the shuttle had been previously, in a shadowy way, suggested, still Draper seems to have been the first to develop the idea in a way to have it accepted as something useful in the loom-weaving industry; and he seems to have been the first to conceive and describe a practical means for operating a detector thus independently mounted.

The Patent Office apparently acted favorably with reference to Draper's application for a patent, upon the sole supposition that his idea of independent mounting, reinforced by a particular description of mechanical means for making the detector operate intermittently upon the weft thread as it was being drawn from the bobbin, and at a predetermined point to operate with favorable results upon a bobbin holding the nearly exhausted weft thread, involved invention.

The Draper construction, as described, contemplated a detector pivoted to the lay, and an important feature in his train of mechanism was a rock-shaft which, at a predetermined point, is operated upon by the end or point of the detector, and performs the function of starting mechanical means which introduce a fresh bobbin or cop into the shuttle.

While what Draper did would, of course, not be accepted, under the established rules of patent construction, as an invention in the pioneer field, or as one broadly covering every possible mounting of a detector outside and away from the shuttle, it would seem that, in view of the fact that he conceived, or at least made practical, the idea of pivoting the detector upon the lay, in connection with means which made it operate independently of the shuttle, and especially in view of the fact that subsequent improvements. including those in actual commercial use, very largely, if not altogether, employ the idea of separate mounting, it would seem that what he did should be accepted as involving patentable invention. Indeed, the defendant does not very stoutly contend otherwise. The more substantial defenses are upon other lines.

Viewing the invention as one of considerable merit, and as one

in which the inventor should be looked upon, at least in a pretty substantial way, as the original discoverer of the idea of mounting the detector independently of the shuttle (though unknown to Draper it had previously, in an imperfect way, been in the minds of others), the claims should not, under the strictest rule of construction, be limited to the exact and particular means described.

Among other things in the inventor's specification is the following:

"Believing myself to be the first to combine with a loom a detector which shall come in direct contact intermittingly with the mass of filling on a bobbin or cop in a shuttle, and thus prevent further weaving of cloth by the filling then in the shuttle when the said filling has been nearly exhausted from the said bobbin or cop, I do not desire or intend to limit my invention to the exact shape shown for the detector, nor to the exact position shown for it on the loom, nor to the exact shape of the trigger connected to the rock-shaft for operating the devices at the opposite end of the loom."

At the arguments, considerable stress was placed upon what is said in this particular part of the specification. It cannot be accepted, however, as of much weight upon the question whether the claim shall be construed narrowly or broadly, because what is now conceded to have been the then state of the art, taken in connection with the action of the Patent Office, makes it apparent that, when that part of the specification was formulated, Mr. Draper was under a mis-apprehension as to what had been done by others in the field which he thus undertook to cover.

This case seems to resolve itself into a situation in which it is not so much a question as to just how broadly the claims of the Draper patent should be construed, as one whether the defendant, who is operating under a patent, is using the same idea and substantially the same means. A careful reading of lines 41–63 of page 3 of the specification of the Draper patent, which have reference to the operation of the detector, makes it perfectly clear that the defendant is not using the particular construction which Draper described. There is no occasion, however, for saying that the Draper invention is one which limits itself to the particular mode of operation described. Indeed, probably such a view would be unwarranted.

Holding the view that the Draper claims should be limited to the idea of independent mounting and to substantially the construction and the mechanical means which Draper described, and holding the view that the defendant's construction and mode of operation are to be accepted as clearly and radically outside of the Draper patent, there is no occasion for passing upon the question of the particular limit which shall be placed upon its claims. This results because the defendant's machine does its work on different principles, and through substantially different mechanical and structural means.

Apparently under the Draper construction the bobbins are changed without stopping the loom, while in the defendant's it is the shuttles which are changed, the loom for the instant stopping, but that is not viewed as a detail of decisive or essential importance upon the question of equivalents and infringement, and it would likewise seem that no great consequence should attach to the thin leaf-spring, marked "32," which is mounted in the side of the defendant's shuttle, as a par-

ticular differentiating feature. This spring performs no essential function, and no very important one, save that of protecting the yarn or thread upon the bobbin from the forceful points of the defendant's feelers or detectors, which are called fingers or slides, one of which operates, as the lay beats up, to contact with the disk of the shuttle spindle, while the other operates to impinge upon or contact with the thin spring and force it against the weft upon the bobbin. The fact that this thin leaf-spring prevents actual physical contact between the finger and the weft would seem not to be a controlling fact.

As illustrated in argument, the leaf-spring in question is no more a functional detector or feeler than is the glove in the ordinary grasp or hand-shake. But aside and beyond these details, it is the general structural plan in respect to the instrumentalities back of the leaf-spring which force contact with the thread upon the bobbin, that broadly differentiates the defendant's scheme of mechanical means from that arranged and described by Draper.

There being, under these views, no infringement, it results that the bill should be dismissed.

Bill dismissed.